**FILED**

FEB 2 7 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHIRLEY CALHOUN, Individually, as Guardian and Conservator of JAMES D. CALHOUN, JR., Incompetent, and as Next Friend of S. E. CALHOUN and J. D. CALHOUN, Minors, 475 East German Street, Sheperdstown, West Virginia 25443 § § § § § § | Civil Action No. _____ |
| *Plaintiffs,* § § | **Plaintiffs Request Trial By Jury** |
| v. § § § | |
| ANTHONY E. WATKINS, M.D., CHARTERED 106 Irving Street N.W., #3200N, Washington, D.C. 20010, BERNARD M. WAGMAN, M.D. 106 Irving Street N.W., #2700N, Washington, D.C. 20010, and LARA S. OBOLER, M.D. 130 East 77th Street, 9th Floor, New York, NY 10021, § § § § § § § § § § | Case: 1:08-cv-00343 Assigned To : Kollar-Kotelly, Colleen Assign. Date : 2/27/2008 Description: PI/Malpractice |
| *Defendants.* § | |

JURY ACTION

**COMPLAINT**

Plaintiff Shirley Calhoun, Individually, as Guardian and Conservator of James D.

Calhoun, Jr., Incompetent, and as Next Friend of S.E. Calhoun and J.D. Calhoun, Minors

(all hereinafter "Plaintiffs") file this Complaint against Anthony E. Watkins, M.D.,

Chartered (hereinafter "Defendant Cardiology Corporation"), Bernard M. Wagman,

M.D., and Lara S. Oboler, M.D. (hereinafter "Defendant Cardiologists"), and for their

causes of action state:

**JURISDICTIONAL STATEMENT**

1.    Subject matter jurisdiction of this Court is founded on diversity of

citizenship grounds, under Article III, section 2 of the United States Constitution and

enumerated in 28 U.S.C. § 1332, *et seq.*

2.    Plaintiff Shirley Calhoun is the wife of James D. Calhoun, Jr. and natural parent of S.E. Calhoun and J. D. Calhoun, all of whom are domiciled in the State of West Virginia; Shirley Calhoun and the above Minors children reside at reside at 475 East German Street, Sheperdstown, West Virginia, 25443; James D. Calhoun, Jr. is also domiciled in West Virginia but due to his physical and mental condition presently resides with his parents at 1603 Fort Conde Ct., Saraland, Alabama, 36571.

3.    Defendant Anthony E. Watkins, M.D. Chartered (hereinafter "Defendant Cardiology Corporation") is a corporation, formed and domiciled in the District of Columbia and having its principal place of business at 106 Irving Street N.W., #3200N, Washington, D.C. 20010, which provides medical and cardiology health care services to individuals in need thereof within the District of Columbia.    Service of process, including of this Complaint, has been agreed to be accepted by the foregoing Defendant's attorneys, H. Kenneth Armstrong or Penny Kahn, with the firm of Armstrong, Donohue, Ceppos & Vaughan, Chartered, 204 Monroe Street, Suite 101, Rockville, Maryland, 20850. **Thus, service on the foregoing Defendant may be accomplished by serving its attorneys directly, by hand-delivering a copy of the filed Summons and Complaint at the foregoing address (See F.R.C.P. Rule 4(h)(1)(A)).**

4.    Defendant Bernard M. Wagman, M.D. (hereinafter "Defendant Wagman") is a duly licensed physician in the District of Columbia, holding himself out to the public as a specialist in the medical field of cardiology, who is a citizen of and domiciled in Bethesda, Maryland, and whose professional residence is: 106 Irving Street N.W., #2700N, Washington, D.C. 20010. Service of process, including of this Complaint, has been agreed to be accepted by the foregoing Defendant's attorneys, H.

2

Kenneth Armstrong or Penny Kahn, with the firm of Armstrong, Donohue, Ceppos & Vaughan, Chartered, 204 Monroe Street, Suite 101, Rockville, Maryland, 20850. **Thus, service on the foregoing Defendant may be accomplished by serving his attorneys directly, by hand-delivering a copy of the filed Summons and Complaint at the foregoing address (See F.R.C.P. Rule 4(e)(2)(C)).**

5.    Defendant Lara S. Oboler, M.D. (hereinafter "Defendant Oboler") is a physician formerly licensed in the District of Columbia, who is presently licensed, practicing medicine, and holding herself out to the public as a specialist in the medical field of cardiology in the State of New York; she is a citizen of and domiciled in the State of New York and her professional residence is: 130 East 77th Street, 9th Floor, New York, NY 10021. Service of process, including of this Complaint, has been agreed to be accepted by the foregoing Defendant's attorneys, H. Kenneth Armstrong or Penny Kahn, with the firm of Armstrong, Donohue, Ceppos & Vaughan, Chartered, 204 Monroe Street, Suite 101, Rockville, Maryland, 20850. **Thus, service on the foregoing Defendant may be accomplished by serving her attorneys directly, by hand-delivering a copy of the filed Summons and Complaint at the foregoing address (See F.R.C.P. Rule 4(e)(2)(C)).**

6.    Thus, there is complete diversity in this case, in that no plaintiff is a citizen of either the District of Columbia or the same state as any defendant in this case.

7.    The subject matter of this Complaint concerns the medical, cardiology and health care, treatment and services rendered to James D. Calhoun, Jr. by all of the Defendant Cardiologists in July of 2005 at offices of the Defendant Cardiology Corporation, 106 Irving Street, N.W., #3200N, Washington, D.C. 20010 and/or 2440 M Street, N.W., #314, Washington, D.C. 20037.

3

8.    As a result and proximate cause of the negligent medical, cardiology and health care, treatment and services rendered to James D. Calhoun, Jr. by the Defendant Cardiologists and Defendant Cardiology Corporation in July of 2005, which is more fully set out below, James D. Calhoun, Jr. suffered a cardiac arrest on or about August 21, 2006 which left him severely and permanently brain-damaged.

9.    The Plaintiff, Shirley Calhoun, brings this Complaint Individually and under Rule 17(c) of the Federal Rules of Civil Procedure as the lawfully appointed Guardian and Conservator of James D. Calhoun, Jr., who has been and remains mentally incompetent as a result of the above cardiac arrest, and as Next Friend of the above minor children.

10.    The amount in controversy and sought by each of the Plaintiffs in this case, exclusive of interests and costs, far exceeds the sum or value which is the minimum limit, *i.e.* $75,000 (for each of the Plaintiffs) necessary for this Court's assertion of jurisdiction under 28 U.S.C. § 1332, *et seq.*.

11.    Accordingly, this Honorable Court has both jurisdiction over the parties, as all well as over the subject matter of this case and controversy pursuant to 28 U.S.C. § 1332, *et seq.*

12.    To the extent that ninety (90) day pre-suit written notice of this action was required to be given to the intended Defendants under District of Columbia Official Code, Div. II, Title 16, Ch. 28, Subch. 16-2802, Plaintiffs have fully complied with this condition precedent.

13.    This suit is timely brought within three (3) years of the date(s) of improper care by the Defendants, *i.e.* July of 2005, pursuant to the statute of limitations

as set forth in the District of Columbia Official Code, Div. II, Ch. 3, §§ 12-301 – 12-302, *et seq.*

14.    Plaintiffs have complied with all other necessary conditions precedent.

## COUNT I: NEGLIGENCE, CAUSATION & DAMAGES

15.    James D. Calhoun, Jr. (hereinafter sometimes "Mr. Calhoun") was legally married to Shirley Calhoun, and they were living together as husband and wife, along with their natural children in West Virginia, in early 2005.

16.    At the time, Mr. Calhoun was: 44 years old, employed as a computer specialist by the United States Government in the Office of Intelligence and Policy Review in Washington, D.C., and had an active and healthy lifestyle, including engaging in regular physical exercise.

17.    Mr. Calhoun's medical conditions in 2005 did include significant risk factors for coronary artery disease, however: hypertension, hypercholesteremia, and hyperlipidemia, along with a very strong family history of premature coronary artery disease.

18.    In April or May of 2005, Mr. Calhoun began to experience shortness of breath, for which he was evaluated by his internal medicine physician, Alice L. Fuisz, M.D.

19.    In view of his condition(s), Dr. Fuisz referred Mr. Calhoun to the Defendant Cardiologists and/or Defendant Cardiology Corporation, where Mr. Calhoun was seen, examined and evaluated on or about July 8, 2005.

20.    At the time of his visit to the Defendant Cardiology Corporation on or about July 8, 2005, Mr. Calhoun underwent a stress thallium (treadmill)

5

electrocardiogram (EKG) test and a cardiac imaging procedure known as a Gated Spect myocardial perfusion scan.

21.    The treadmill stress test and Gated Spect myocardial perfusion scan were both interpreted on or about July 8, 2005 by Defendant Wagman, who at all relevant times was an employee or agent of the Defendant Cardiology Corporation, acting within the course and scope of his employment or agency with the Defendant Cardiology Corporation.

22.    At the time of his interpretations of these tests, Defendant Wagman had a duty to use ordinary and acceptable care in doing so but failed to meet the standard of care and was negligent in his care of Mr. Calhoun, including but not limited to the following particulars:

    a.  Interpretation of the treadmill EKG stress test;

    b.  Interpretation of the Gated Spect myocardial perfusion scans;

    c.  Misreading/misinterpreting the Gated Spect myocardial perfusion scans as being "normal" and/or showing "symmetric and normal perfusion throughout";

    d.  Failing to appreciate the presence of slight and moderate reductions of uptake present on the Gated Spect myocardial perfusion scans;

    e.  Failing to appreciate that the abnormalities visualized on the Gated Spect myocardial perfusion scans were consistent with blockage and/or ischemia;

    f.  Failing to recognize the quantitative assessment, as depicted by the computer scoring system, was also indicative of slight and moderate reductions in uptake on the Gated Spect myocardial perfusion scans;

g. Failing to identify the vascular supply to and/or territories responsible for the abnormalities or defects demonstrated on the Gate Spect myocardial perfusion scans;

h. Failing to correlate properly the results of both the treadmill EKG stress test and Gated Spect myocardial perfusion scans, together with Mr. Calhoun's history and clinical information, in order to make an appropriate diagnosis and/or recommendations;

i. Failing to recognize and/or interpret the Gated Spect myocardial perfusion scans as positive for ischemia or abnormalities/defects consistent with coronary ischemia;

j. Failing to diagnose and/or conclude that Mr. Calhoun had coronary artery ischemia likely due to blockage, by virtue of both the treadmill EKG stress test and the Gated Spect myocardial perfusion scans;

k. Failing to recommend that Mr. Calhoun undergo a cardiac catheterization, angiography, and/or further coronary investigation, care and/or treatment, including in a timely manner;

l. Providing a misleading conclusion that the Gated Spect myocardial perfusion scan signified "a very low likelihood of significant coronary artery disease";

m. Making improper conclusions as to the results of the treadmill stress test and/or the Gated Spect myocardial perfusion scans;

n. Failing to provide any recommendations, despite these test results and Mr. Calhoun's very strong history of coronary disease, and his

7

hypertension and hyperlipidemia, for proper and timely follow-up cardiac care;

o.  Providing improper and misleading conclusions and information to Mr. Calhoun, Anthony E. Watkins, M.D., Lara S. Oboler, M.D. and/or Alice L. Fuisz as to the results of the treadmill stress test and/or Gated Spect myocardial perfusion scans;

p.  Failing to advise Mr. Calhoun, or ensure that Mr. Calhoun was informed, he had coronary artery disease/blockage and was at substantial risk of a coronary event absent further diagnostic and therapeutic intervention;

q.  Failing, under the circumstances, to obtain a proper consultation and/or review of his interpretation and findings on the Gated Spect myocardial perfusion scan by a cardiologist who was board certified in the subspecialty of Nuclear Medicine or who was more skilled/trained in interpreting Gated Spect myocardial perfusion scans; and/or,

r.  Otherwise being negligent under the facts and circumstances as established by the evidence.

23.    As a direct and proximate result of the aforesaid negligence of Defendant Wagman, James D. Calhoun, Jr. experienced a cardiac arrest on or about August 21, 2006, together with lack of blood oxygen (hypoxia) and/or flow (ischemia/anoxia) to his brain, resulting in severe and permanent brain damage and all the injuries and damages to Plaintiffs as later set out herein.

24.    Pleading further, Defendant Oboler was also, at all relevant times, an employee or agent of Defendant Cardiology Corporation who was acting within the course and scope of her employment or agency with Defendant Cardiology Corporation.

8

25.    At some time on, about or in-between July 8–12, 2005, Defendant Oboler saw James D. Calhoun, Jr. and/or reviewed the results of his treadmill EKG stress test and/or Gated Spect myocardial perfusion scans, or the interpretations/reports of Defendant Wagman and/or Defendant Watkins regarding such tests. Following this evaluation, examination and/or review, Defendant Oboler reassured Mr. Calhoun that his heart was fine and/or that he had "a very low likelihood of underlying significant coronary artery disease." In fact, Defendant Oboler wrote a letter to Dr. Fuisz, Mr. Calhoun's internist, dated July 12, 2005, advising Dr. Fuisz to this effect and that Mr. Calhoun's "stress thallium showed normal perfusion throughout. . . ."

26.    Defendant Oboler had a duty to use ordinary and acceptable care in her care, services and treatment(s) provided to James D. Calhoun, Jr. during all the aforesaid times but she also failed to meet the standard of care and was negligent in her care of Mr. Calhoun, including but not limited to the following particulars:

   a.    Failing to inform Mr. Calhoun that his treadmill EKG stress test revealed ischemic changes;

   b.    Failing to properly reconcile the EKG stress test report of Defendant Wagman and Defendant Watkins, interpreted as showing "mildly positive treadmill stress test for ischemia based on EKG changes alone", with the Gated Spect myocardial perfusion scan report of Defendant Wagman and Defendant Watkins, which was interpreted as being "normal", with "symmetrical and normal perfusion throughout;"

   c.    Failing to properly utilize all Mr. Calhoun's clinical history, signs and symptoms in order to properly correlate them with his treadmill EKG

9

stress test and Gated Spect myocardial perfusion scans, in order to arrive at a proper diagnosis;

d. Improperly advising and misleading Alice L. Fuisz, M.D. by writing to Dr. Fuisz and stating that Mr. Calhoun's "stress thallium showed normal perfusion throughout. . . .";

e. Failing to properly advise Dr. Fuisz in the letter dated July 12, 2005 that Mr. Calhoun had EKG evidence of ischemia;

f. Misrepresenting to Mr. Calhoun that his heart was fine and/or that he had "a very low likelihood of underlying significant coronary artery disease;"

g. Dismissing Mr. Calhoun's clinical history, signs and symptoms and evidence of coronary artery disease and ischemia without proper consideration of the same;

h. Failing to recommend to Mr. Calhoun the need for coronary catheterization, angiography; and/or further coronary investigation and treatment;

i. Failing to advise Dr. Fuisz of the need for coronary catheterization, angiography, and/or further coronary investigation of Mr. Calhoun; and/or

j. Otherwise being negligent under the facts and circumstances as established by the evidence.

27. As a direct and proximate result of the aforesaid negligence of Defendant Oboler, James D. Calhoun, Jr. experienced a cardiac arrest on or about August 21, 2006, together with lack of blood oxygen (hypoxia) and/or flow (ischemia/anoxia) to his brain,

resulting in severe and permanent brain damage and all the injuries and damages to Plaintiffs as later set out herein.

28.    Pleading further, the Defendant Cardiology Corporation is vicariously liable under the doctrine of *respondeat superior* or principles of agency law, for the negligent conduct of the Defendant Cardiologists which was a proximate cause of the injuries to James D. Calhoun, Jr. and the injuries and damages to the Plaintiffs as set out below.

29.    As a direct and proximate consequence of the negligence of the Defendants as set out above, James D. Calhoun, Jr. was referred back to Dr .Fuisz, without any further cardiac testing or treatment, who concluded that the results of the cardiac tests performed or interpreted by the Defendants were normal or "okay", and merely prescribed a bronchial inhaler for Mr. Calhoun's shortness of breath.

30.    Thereafter in 2005 and into 2006, Mr. Calhoun continued to be active, to exercise, and to maintain his blood pressure control with medication.  He would occasionally use the bronchial inhaler for shortness of breath, but neither he or his family had any way of knowing that certain arteries in his heart were like a ticking time-bomb— that he was at extreme risk for a heart attack (myocardial infarction) or other coronary event due to the severe blockage in these blood vessels in his heart.

31.    On or about August 21, 2006, while exercising on a treadmill at a Gold's gym, James D. Calhoun, Jr. experienced sudden cardiac death (cardiac arrest) as a result of ventricular fibrillation in association with a heart attack (myocardial infarction). Despite cardiopulmonary resuscitation and attempted electrical cardioversion at Gold's gym, Mr. Calhoun could not be successfully converted back to a pulse of electrical activity until after EMS arrived on the scene and took over.

32.    Mr. Calhoun was intubated and transported emergently at this time to Jefferson Hospital where he received initial stabilization care before being transferred the same day to Winchester Medical Center in Winchester, Virginia.

33.    At Winchester Medical Center, coronary artery catheterization was performed on or about August 21, 2006, reportedly revealing stenosis/blockage in various branches of Mr. Calhoun's coronary arteries: 40-60% in the left main; 40-90% in the left circumflex; 50-80% in the left anterior descending; and 40-90% in the right coronary, along with a left ventricular ejection fraction of 35-40%.

34.    Subsequently in or about October of 2005, Mr. Calhoun returned to the Winchester Medical Center and successfully received coronary artery bypass surgery, but his heart muscle remains significantly damaged due to the heart attack he experienced on or about August 21, 2006.

35.    Despite the efforts of bystanders at Gold's gym, EMS, and the health care providers at both hospitals, Mr. Calhoun also suffered severe and permanent global anoxic/hypoxic-ischemic brain damage, to multiple areas of his brain, as a result of his cardiac arrest on or about August 21, 2006, when his heart could not adequately pump oxygenated blood to his brain; and this damage has resulted in severe brain dysfunction, including manifest impairment in cognition, memory, and behavior, as well as mental incompetency.    Despite rehabilitation and medical efforts, Mr. Calhoun remains in this condition and is unable to work and properly care for himself.

36.    Consequently, as a result of the negligence of each and all of the Defendants, James D. Calhoun, Jr., has suffered: severe conscious pain and suffering; bodily (including heart and brain) injuries; physical, motor and mental impairment and disabilities; mental anguish; disfigurement; deformities; discomfort; inconvenience; and

12

medical, hospital, healthcare and custodial care bills and expenses; and, with reasonable probability and certainty, will continue to suffer all of these injuries and damages in the future. Mr. Calhoun has also suffered lost wages in the past and will, with reasonable probability and certainty, continue to experience a prospective loss of earnings during the remainder of his normal life expectancy. Shirley Calhoun, as Guardian and Conservator for James D. Calhoun, Jr., hereby sues to recover for all such damages which are far in excess of $75,000, exclusive of interest and costs of court.

37.    As a further result of the negligence of each and all of the Defendants, the minor plaintiffs have, likewise, suffered damage to the parent-child relationship with their father and their family life, in the form of a loss of parental consortium—e.g. the loss of love, affection, comfort, society, solace, companionship, guidance, and support, etc., that is natural to the parent-child relationship—as a result of the injuries and damages to James D. Calhoun, Jr., and with reasonable probability/certainty, this loss of parental consortium will continue in the future. Shirley Calhoun, as Next Friend of S. E. Calhoun and J. D. Calhoun, hereby sues to recover for all such damages which are, for each such Minor, in excess of $75,000, exclusive of interest and costs of court.

38.    As a further result of the negligence of each and all of the Defendants, the plaintiff, Shirley Calhoun, has also individually suffered damage to her relationship with her husband, in the form of a loss of spousal consortium—e.g. the loss of love, affection, sexual relations, comfort, society, solace, companionship, guidance, and support, etc., that is natural to the spousal relationship--as a result of the injuries and damages to James D. Calhoun, Jr., and with reasonable probability/certainty, this loss of spousal consortium will continue in the future. Shirley Calhoun, Individually, hereby sues to recover for all such damages which are far in excess of $75,000, exclusive of interest and costs of court.

13

39.    Plaintiffs respectfully request a Trial by Jury.

## CONCLUSION AND PRAYER

WHEREFORE, Plaintiff Shirley Calhoun, Individually, as Guardian and Conservator of James D. Calhoun, Jr., Incompetent, and as Next Friend of S. E. Calhoun and J. D. Calhoun, Minors, requests that the Defendants, Anthony E. Watkins, M.D., Chartered, Bernard M. Wagman, M.D., and Lara S. Oboler, M.D., be cited to appear and answer herein, and that upon final jury trial, Plaintiffs have:

(1) Judgment in their favor, jointly and severally, against the Defendants in the amount of sixteen million dollars ($16,000,000);

(2) All available elements of interest, including but not limited to, pre-judgment interest (if applicable), post-judgment interest in the maximum amount to the extent permitted by law;

(3) Costs of court; and

(4) Such other further and final relief, both general and special, at equity and in law, to which they may show themselves justly entitled.

ANASTOPOULO & CLORE, LLC

Mark D. Clore, DC Bar # 492672
Samuel K. Allen, DC Bar #482350
706 Orleans Road
Charleston, South Carolina 29407
843-722-8070
Fax: 843-225-7112

ATTORNEYS FOR THE PLAINTIFFS

February 26, 2008

B 08-343
CKK

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

Shirley Calhoun, individually, as guardian and Conservator of James D.
Calhoun, Jr., incompetent, and as next friend of SE Calhoun and JD
Calhoun, minors

**DEFENDANTS**

Anthony E. Watkins, M.D., Chartered,
Bernard M. Wagman, M.D. and Lara S. Oboler, M.D.

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    Jefferson
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT    Washington
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Mark D. Clore and Samuel K. Allen
Anastopoulo & Clore, LLC
706 Orleans Road; Charleston, SC 29407
843-722-8070

ATTORNEYS (IF KNOWN)

H.
Arr
204
301

Case: 1:08-cv-00343
Assigned To : Kollar-Kotelly, Colleen
Assign. Date : 2/27/2008
Description: PI/Malpractice

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ○ 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ◉ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ◉ 4 |
| Citizen of Another State | ◉ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust
- ☐ 410 Antitrust

### ◉ B. Personal Injury/ Malpractice
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☒ 362 Medical Malpractice
- ☒ 365 Product Liability
- ☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
- ☐ 151 Medicare Act

**Social Security:**
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

**Other Statutes**
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ✍ E. General Civil (Other)    OR    ○ F. Pro Se General Civil

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

(3)

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

○ **1** Original Proceeding ○ **2** Removed from State Court ○ **3** Remanded from Appellate Court ○ **4** Reinstated or Reopened ○ **5** Transferred from another district (specify) ○ **6** Multi district Litigation ○ **7** Appeal to District Judge from Mag. Judge

*(1 Original Proceeding circled/selected)*

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 U.S.C. Section 1332, et seq.–Medical Malpractice Misdiagnosis with Brain Injury

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** 16,000,000.00<br>**JURY DEMAND:** | Check YES only if demanded in complaint<br>YES ☒    NO ☐ |
|---|---|---|---|

| **VIII. RELATED CASE(S) IF ANY** | (See instruction) | YES ☐    NO ☒ | If yes, please complete related case form. |
|---|---|---|---|

**DATE** 2/26/08 / 27 **SIGNATURE OF ATTORNEY OF RECORD** *[signature]*

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed *only* if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the *primary* cause of action found in your complaint. You may select only *one* category. You *must* also select *one* corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.